**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of the Application of

HARTFORD FIRE INSURANCE COMPANY,

                          Petitioner,

            -against-

THE EVERGREEN ORGANIZATION, INC.
CHARLES A. CARONIA, GARY UPHOUSE,
CHARLES CARONIA, JR., and ANDREJS
KRUTAINIS,

                      Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 07cv7977

**PETITION FOR JUDGMENT**
**CONFIRMING ARBITRATION**
**AWARD**

     Petitioner Hartford Fire Insurance Company ("Hartford"), through its attorneys Stroock & Stroock & Lavan LLP, respectfully petitions this Court for entry of a final judgment confirming the final awards made by the Arbitration Panel in this matter.

# I.

## INTRODUCTION

1.     The subject of the arbitration in this matter is a dispute between Hartford Fire Insurance Company ("Hartford"), on the one hand, and The Evergreen Organization, Inc. ("Evergreen") and its principals, on the other hand, relating to their performance under a Program Manager's Agreement ("PMA") and a Claims Servicing Agreement ("CSA").

2.     Hartford issued GAP insurance policies to customers (the "GAP Program" or "Program") from July 2000 through early 2003.  Evergreen acted as Hartford's Program Manager and Claims Servicing Agent with regard to the administration of Hartford's GAP insurance business from July 2000 through February 24, 2004.

3.     Evergreen and its principals, Charles Caronia, Sr., Charles Caronia, Jr., Gary Uphouse, and Andrejs Krutainis (collectively, the "Principals") materially breached obligations under the PMA and CSA as well as their fiduciary duties owed to Hartford that arise out of those agreements.  True and correct copies of the PMA and CSA are attached hereto as Exhibits "A" and "B", respectively, and are incorporated by reference herein.

4.     In February 2004, the parties commenced arbitration and thereafter participated in an arbitration hearing in January 2007.  A final award was rendered by the Arbitration Panel. Hartford seeks entry of judgment against Evergreen, Charles Caronia, Sr., and Gary Uphouse (collectively, the "Respondents") based on that final award.

# II.

## THE PARTIES

5.     Hartford is, and at all relevant times herein was, an Indiana corporation organized under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut.

6.      Hartford is informed and believes, and thereon alleges, that Respondent Evergreen was at all relevant times a corporation organized under the laws of the State of Pennsylvania, with its principal place of business in Chester Springs, Pennsylvania.

7.      Hartford is informed and believes, and thereon alleges, that respondent Charles Caronia, Sr. ("Caronia Sr.") is a citizen of the State of Pennsylvania.

8.      Hartford is informed and believes, and thereon alleges, that respondent Charles Caronia, Jr. ("Caronia Jr.") is a citizen of the State of Pennsylvania.

9.      Hartford is informed and believes, and thereon alleges, that respondent Gary Uphouse ("Uphouse") is a citizen of the State of Pennsylvania.

10.     Hartford is informed and believes, and thereon alleges, that respondent Andrejs Krutainis ("Krutainis") is a citizen of the State of Pennsylvania.

## III.

## JURISDICTION AND VENUE

11.     Jurisdiction exists by virtue of diversity of citizenship, pursuant to 28 U.S.C. §1332. The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000), exclusive of interest and costs.

12.     Venue is proper in this judicial district under the forum selection clause of the parties' arbitration agreement (the "Arbitration Agreement"), set forth in Article XVIII of the PMA, which states in relevant part:

> "Arbitration
> A. Submission to Arbitration.  In the event of any dispute between the Company and the Manager with reference to the interpretation, application, formation, enforcement or validity of this Agreement or any other agreement between them, or their rights with respect to any transaction involved, whether such dispute arises before or after termination of this Agreement, such dispute, upon written request of either party, shall be submitted to

the decision of a board of arbitration composed of two arbitrators and an umpire meeting at the Company's offices in New York unless otherwise mutually agreed. Notwithstanding the generality of the foregoing, the Company's right to exercise any of the options contained in ARTICLES XII., XIII., or XVI. shall not be limited by the submission of any dispute to arbitration.

B.      Sole Remedy. The parties agree that arbitration pursuant to the terms of this Article is the sole remedy for the resolution of disputes between them under this Agreement or any other agreement between them. The board of arbitration will have complete and exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability, and shall only conduct the arbitration proceeding to resolve disputes between the parties to the Agreement, and not as a class action involving other parties."

The Arbitration Provision also states, "The Arbitration shall be governed by the United States Arbitration Act, Title 9. U.S.C §1, et seq."

# IV.

# BACKGROUND

13.      Hartford provides various forms of insurance to businesses throughout the United States. One of the lines of insurance written by Hartford was "GAP" insurance for vehicles. GAP insurance generally provides insurance coverage for the monetary difference between the outstanding balance of a vehicle loan or lease and the actual cash value of that vehicle at the time of a covered loss to the vehicle.

14.      In or about October 2000, Hartford entered into an agreement retaining Evergreen to act as a Program Manager for its GAP Program effective in or about July 2000. Evergreen was an insurance brokerage firm located in Chester Springs, Pennsylvania and was licensed as an insurance agent by the Pennsylvania Department of Insurance.

15.    Evergreen acted as Hartford's Program Manager for its GAP Program from July 2000 until January 2003.  Pursuant to its role as Hartford's Program Manager for the GAP Program, Evergreen entered into the PMA with Hartford.

16.    Pursuant to the PMA, Evergreen agreed to faithfully perform the following duties for Hartford: solicitation of business, servicing of business, binding of risks, policy issuance, notice of risks bound, quotation of premium rates, collection and remittance of premiums for GAP business written, timely accounting for GAP business, act as a fiduciary for Hartford, maintain the confidentiality of all documents generated in conducting Hartford's GAP Program, promote and safeguard the best interests of Hartford, and keep and maintain for as long as Hartford requires complete records and accounts of all GAP business and transactions pertaining to policies written under the Hartford GAP Program.

17.    The PMA required Evergreen to, <u>inter alia</u>, hold amounts collected under Hartford's GAP Program in a separate fiduciary trust account and further provided Hartford the right to seek an injunction to obtain monies not properly paid to Hartford pursuant to the PMA.

18.    Pursuant to Article IV of the PMA, Evergreen had no authority to handle claims except as set forth in a Claims Service Agreement ("CSA") between Hartford and Evergreen. Pursuant to the CSA, Evergreen was to have the authority and responsibility to provide claims services in connection with the GAP business underwritten by Hartford pursuant to the PMA. Under the CSA, such claims servicing included creation and maintenance of claims files, both hard copy and computer on-line files, and storage of such files.

19.    The Respondents materially breached their obligations under the PMA and CSA and their fiduciary duties owed to Hartford that arose out of those agreements.

20.    On January 10, 2003, Hartford terminated the PMA and specifically canceled Evergreen's right to underwrite new insurance (issue policies) on Hartford's behalf.  However,

pursuant to the CSA, Evergreen continued to have and provide certain duties and obligations under the PMA, including the charging, collection, receipt, accounting and reporting for all premiums collected on policies written under the agreement. Evergreen remained obligated to act as a fiduciary with respect to such premiums.

21.    On or about February 17, 2004, Evergreen served Hartford with a Demand for Arbitration as to the issue of proper premium remittance.

22.    On February 18, 2004, Hartford gave written notice that it was terminating its Claims Servicing Agreement with Evergreen effective February 25, 2004.

23.    On or about March 18, 2004, Evergreen, through its counsel, informed Hartford that Evergreen would commence dissolution proceedings, but that it would continue to maintain its offices and meet its obligations under the PMA and CSA. Evergreen failed to honor that representation. Instead, on or about April 8 or 9, 2004, Evergreen shut its doors. For all intents and purposes, Evergreen vanished and ignored its obligations to Hartford.

24.    On April 30, 2004, Hartford served a Demand for Arbitration against the Respondents. Evergreen agreed to arbitrate the dispute with Hartford.

## V.

## **THE ARBITRATION**

25.    Arbitrators were selected pursuant to the procedures contained in the Arbitration Agreement. Hartford appointed Andrew S. Walsh, Esq. as its party arbitrator. Evergreen appointed Bernd G. Heinze, Esq. as its party arbitrator. Pursuant to the Arbitration Agreement, the party arbitrators appointed David Thirkill as umpire.

26.    On February 25, 2005, arbitrators Thirkill, Walsh, and Heinz (collectively, the "Arbitration Panel") convened to resolve disputes, initially, between Hartford Fire Insurance Company and The Evergreen Organization.

27.     On or about September 8, 2005, Hartford obtained an Order from this Court compelling the Principals to participate in the arbitration. A true and correct copy of this Court's September 8, 2005 Order is attached hereto as Exhibit "C."[1] Thereafter, the Principals were joined as parties to the arbitration.

28.     Prior to an arbitration hearing, the parties conducted extensive discovery, including many the taking of many depositions. Thereafter, during the period January 8, 2007 through January 12, 2007, Hartford and Respondents participated in an arbitration hearing (the "Arbitration") before the duly convened Panel. The parties participated in a fundamentally fair hearing, had the opportunity to be heard, present evidence and argue their claims. The parties also prepared and submitted extensive post-arbitration hearing briefs.

29.     On April 2, 2007, the Arbitration Panel issued its Interim Final Award (the "First Award") in favor of Hartford and against Respondents and specified the damages, excluding attorney's fees and costs, for which the Panel said it would entertain a motion by Petitioner. A true and correct copy of the First Award is attached hereto as Exhibit "D."

30.     Hartford submitted a motion for an award of attorney's fees and costs, which was fully briefed by all parties. Thereafter, on July 9, 2007, the Arbitration Panel issued a Second Interim Final Award (the "Second Award"), which awarded Hartford its attorney's fees and costs. A true and correct copy of the Second Award is attached hereto as Exhibit "E."

31.     On July 21, 2007, the Arbitration Panel issued an Amended Second Interim Final Order, which set forth a specific dollar amount of the attorney's fees and costs awarded to Hartford. A true and correct copy of the Panel's Amended Second Interim Final Award is

---

[1] This Court thereafter affirmed its Order when it denied Respondents motion to vacate the Court's Order compelling arbitration. A true and copy of this Court's Order denying Respondent's motion to vacate is attached hereto as Exhibit "G."

-7-

attached hereto as Exhibit "F".

32.    Pursuant to the Arbitration Panel's orders, Hartford has been awarded $6,661,760.91 in damages, attorney's fees, and costs against Respondents and ordered such monies to be paid within 30 days of the award.

33.    In June 2007, Evergreen paid Hartford $405,622.86, thereby leaving an unpaid balance of $6,256,138.10.

## VI.

## COUNT I

34.    Hartford incorporates by reference each and every allegation set forth in paragraphs 1 through 30, inclusive, as if fully set forth herein.

35.    Pursuant to 9 U.S.C. § 9, Hartford is entitled to judicial confirmation of Arbitration Panel's Awards.

36.    Pursuant to the Awards and 9 U.S.C. §9, Judgment should be entered in favor of Hartford and against Respondents.

## **PRAYER FOR RELIEF**

WHEREFORE, Hartford demands judgment granting the Petition and awarding the following relief:

      (1)     An Order confirming the Awards issued by the Arbitration Panel; and

      (2)     Any such other relief as this Court deems appropriate.

Date September 11, 2007:           Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP

By: ___/S/_____

James E. Fitzgerald (JF–5594)
(A Member of the Firm)
Michele Jacobson (MJ–4297)
Seema Misra (SM–2094)
*Attorneys for Hartford Fire Insurance Company*
180 Maiden Lane
New York, New York 10038-4982
(212) 806-5400