UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------- x

In the Matter of the Application of

HARTFORD FIRE INSURANCE COMPANY,

Petitioner,

-against-

THE EVERGREEN ORGANIZATION, INC. CHARLES A. CARONIA, GARY UPHOUSE, CHARLES CARONIA, JR., and ANDREJS KRUTAINIS,

Respondents.

--------------------------------------- x

Civil Action No. 07cv7977

**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CONFIRM ARBITRATION AWARD**

Hartford Fire Insurance Company ("Hartford"), through its attorneys Stroock & Stroock & Lavan LLP, respectfully submits the following memorandum of law in support of its Petition to confirm arbitration award issued in its favor and against Respondents, The Evergreen Organization, Inc. ("Evergreen"), Charles Caronia, Sr. and Gary Uphouse (collectively "Respondents").

I.

## PRELIMINARY STATEMENT

This dispute relates to performance under a Program Manager's Agreement ("PMA") and a Claims Servicing Agreement ("CSA") entered into between Hartford and Evergreen with respect to the administration of Hartford's GAP business.[1]

Hartford wrote GAP insurance from July 2000 through early 2003. Evergreen acted as Hartford's Program Manager and Claims Servicing Agent with regard to the administration of Hartford's GAP insurance business. Evergreen and its principals, Charles Caronia, Sr. and Gary Uphouse ("Principals"), materially breached obligations under the PMA and CSA and their fiduciary duties owed to Hartford that arose out of those agreements. Thereafter, the parties commenced an arbitration proceeding. A final award was made in Hartford's favor. Hartford now seeks entry of judgment against Evergreen and the Principals (collectively, "Respondents")

II.

## BACKGROUND FACTS

On or about February 17, 2004, Evergreen served Hartford with a Demand for Arbitration regarding premium remittances and offsets for claimed administration fees under the PMA and CSA. On February 18, 2004, Hartford gave written notice that it was terminating the CSA effective February 25, 2004. On or about March 18, 2004, Evergreen, through its counsel, informed Hartford that Evergreen was being dissolved, but that Evergreen would continue to maintain its offices and meet its obligations to Hartford under the PMA and CSA. Evergreen failed to honor that promise. Instead, by early April 2004, Evergreen had shut its doors and ignored its fiduciary and other obligations to Hartford. On or about April 30, 2004, Hartford served a Demand for Arbitration on Evergreen and the Principals and filed a Verified Petition with this Court.

---

[1] GAP insurance generally provides insurance coverage for the monetary difference between the outstanding balance of a vehicle loan or lease and the actual cash value of that vehicle at the time of a covered loss to the vehicle.

On May 4, 2004, Hartford filed with this Court a Motion For A Temporary Restraining Order, Preliminary Injunction, and Attachment Order in Aid of Arbitration against Evergreen and the Principals requesting that the Court freeze the assets of Evergreen and order Evergreen to provide Hartford with access to its books and records. On May 14, 2005, Evergreen and the Principals filed oppositions to Hartford's motion. However, the Principals did not object to the jurisdiction of this Court.

On June 8, 2004, the Court found that Evergreen had likely diverted Hartford trust fund assets of at least $700,000, and therefore granted Hartford's motion and ordered that Evergreen: (1) establish a fiduciary account naming Hartford as the exclusive beneficiary; (2) not transfer or assign any assets of Evergreen; (3) identify to Hartford all assets held in Evergreen's name; (4) have its assets attached up to the amount of $700,000; (5) provide Hartford access to its books and records relating to policies issued on behalf of Hartford; and (6) preserve all books and records relating to policies issued on behalf of Hartford.

On or about July 19, 2004, Evergreen filed a response to Hartford's Demand for Arbitration. Thereafter, arbitrators were selected pursuant to the procedures contained in the Arbitration Agreement. Specifically, Hartford appointed Andrew S. Walsh, Esq. as its party arbitrator, and Evergreen appointed Bernd G. Heinze, Esq. as its party arbitrator. Pursuant to the Arbitration Agreement, the party arbitrators appointed David Thirkill as umpire.

On February 25, 2005, Hartford and Evergreen participated in an Organizational Meeting with the Arbitration Panel, at which time the Panel issued a schedule for the arbitration and ordered the parties to commence discovery. The Principals, however, refused to submit to the jurisdiction of the Arbitration Panel.

In or about May 2005, Hartford advised the Arbitration Panel that it would file a Petition with this Court to compel the Principals to arbitrate the dispute with Hartford. The Arbitration Panel therefore stayed the arbitration pending this Court's decision regarding this Petition to Compel Arbitration. On or about August 11, 2005, Hartford filed a Petition to Compel

Arbitration with this Court to compel the Principals to arbitrate the dispute with Hartford under alter ego and principal-agent theories of liability. On or about September 7, 2005, this Court granted Hartford's Petition and issued an Order compelling the Principals to submit to arbitration. A true an correct copy of the Court's September 7, 2005 Order is attached to Hartford's Petition as Exhibit "C." Thereafter, the Principals were joined as parties to the arbitration.

From January 8, 2007, through January 12, 2007, the Arbitration Panel conducted an Arbitration hearing. On April 2, 2007, the Panel issued its First Interim Award in favor of Hartford, finding (1) Evergreen liable to Hartford for various breaches of fiduciary duty committed while acting as Hartford's Program Manager and Claims Servicer, and (2) that the evidence proved that the Evergreen corporate veil should be pierced with respect to its principals, Charles Caronia, Sr. and Gary Uphouse:

> "After much deliberation and extensive review of the cases cited by the parties, the majority of the Panel are of the opinion that Messrs. Uphouse and Caronia, the shareholders of the corporation, disregarded the corporate form of Evergreen in virtually all respects. They treated the corporation as their "personal sand box". ***Accordingly the Panel finds that Messrs Uphouse and Caronia Sr. are not protected by the Evergreen corporate structure***."

First Interim Award at Paragraph 6.i. (emphasis added), a copy of which is attached to Hartford's Petition as Exhibit "D." The First Interim Award awarded damages to Hartford against Respondents in the total amount of $5,854,453 as follows:

1. $ 557,000 – Unauthorized diversion of premium trust funds ($440,000 plus interest in the amount of $117,000). [First Interim Award at Paragraph 1.]

2.     $4,796,243 – Evergreen's breach of its duty of care under the PMA contract. [First Interim Award at Paragraph 5.xi.]

3.     $ 501,210    Enrollment fees for unauthorized writing of JM&A Account (calculated at $3/enrollment fee 167,070 enrollments). This item of damages was specifically awarded against Mr. Uphouse and Evergreen jointly and severally. [First Interim Award at Paragraph 6.ii.]

Thereafter, Hartford, pursuant to the Arbitration Agreement, made a motion to the Arbitration Panel for an award of its attorney's fees and costs. Respondents filed oppositions to that motion. On July 9, 2007, the Arbitration Panel issued a Second Interim Final Award, which awarded Hartford 75% of its attorney's fees and costs incurred in connection with the arbitration.[2] A copy of the Second Interim Final Award is attached to Hartford's Petition as Exhibit "E." On July 21, 2007, the Arbitration Panel issued an Amended Second Interim Final Order specifying the exact dollar amount of the attorney's fees and costs awarded to Hartford in the amount of $807,307.91. That order further noted that Mr. Uphouse is required to personally pay Hartford $100,000 of that amount.

Thus, the Arbitration Panel has awarded Hartford a total of $6,661,760.91 ($5,854,453 in damages) and ($807,307.91 in attorney's fees and costs). Of this $6,661,760.91, the Panel has awarded Hartford: (a) $6,060,550.91 against Evergreen and its principals based on alter ego liability, and (b) an additional $601,210 against Mr. Uphouse and Evergreen.

---

[2] Hartford submitted to the Arbitration Panel an Amended Statement of Fees and Costs (the "Fee Statement"), which set forth $1,084,674.15 in attorney's fees and costs. However, the Panel deducted from the Fee Statement $8,082.63 in fees paid to Hartford's party arbitrator (Andy Walsh) and $180.97 for meals, as those amounts were inadvertently included in the Fee Statement. After this slight adjustment, Hartford's Fee Statement then totaled $1,076,307.91. The Panel then awarded Hartford 75% of this reduced amount (of $1,076,307.91), for a total award of attorney's fees and costs in the amount of $807,307.91.

In early July 2007, Evergreen paid Hartford $405,622.86 in partial satisfaction of the Arbitration Panel's award. Those funds represented the balance in the fiduciary trust account that Evergreen created pursuant to this Court's June 8, 2004 Order granting Hartford's Motion For A Temporary Restraining Order, Preliminary Injunction, and Attachment Order in Aid of Arbitration.

Hartford now moves to have the amount of the arbitration award entered as judgments against Evergreen and the Principals so that it can collect the balance of the arbitration award.

## III.

## ARGUMENT

### A. The Court Has Proper Authority To Enter Judgment On The Arbitration Award.

This Arbitration is subject to the Arbitration Provision in the PMA, which is governed by the Federal Arbitration Act ("FAA"). See FAA, 9 U.S.C. § 1, et seq. Pursuant to the FAA, "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such a contract shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The term "involving commerce" covers more than just persons or activities within the flow of interstate commerce; it should be broadly construed to the full limit of Congress' Commerce Clause power, so that it applies to any contract affecting interstate commerce regardless of whether the parties intended the contract to affect interstate or international commerce. Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 274, 115 S.Ct. 834, 130 L. Ed. 2d 753 (1995); see 9 U.S.C. § 1 ("'[C]ommerce' as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation ....").

The Second Circuit has clearly set forth the standard for confirmation of an arbitration award, recognizing that "confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." Florasynth v. Pickolz, 750 F.2d 171, 176 (2d Cir. 1984). "Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993). "It is well settled that judicial review of arbitration awards is extremely limited . . . . An arbitration award must be upheld when the arbitrator offers even a barely colorable justification for the outcome reached." Wien & Malkin LLP et al. v. Helmsley-Spear, Inc., 6 N.Y.3d 471, 479 (2006) (citations omitted). An "arbitration decision must be confirmed if there is *any* basis for upholding the decision and 'if there is even a barely colorable justification for the outcome reached.'" Bear Sterns & Co., Inc. v. 1109580 Ontario, Inc., 409 F.3d 87, 91 (2d Cir. 2005).

The arbtiration award here satisfies the minimal, threshold requirements for confirmation. The Arbitration Panel oversaw a full week of live hearing testimony, including direct and cross-examination of eight live witnesses and three witnesses whose testimony was presented by deposition. The Arbitration Panel itself questioned many of the live witnesses to clarify specific portions of their testimony and to resolve its own questions. Extensive documentary evidence was also presented for the Arbitration Panel's consideration. In addition, prior to the arbitration hearing, the parties submitted, and the Panel reviewed, extensive pre-hearing briefs with exhibits and excerpts of sworn deposition testimony. After the hearing, and at the request of the Panel, the parties submitted extensive closing briefs. Thus, the Arbitration Panel's Award is well founded and should be confirmed pursuant to the Federal Arbitration Act.

**B. The Court Should Enter Judgment Against Charles A. Caronia, Sr. and Gary Uphouse Upon The Arbitrators' Award.**

The Federal Arbitration act provides "relatively limited grounds for court review of an arbitration award." Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Intern., Ltd., 888 F.2d 260, 264 (2nd Cir. 1989); *see also* Federal Arbitration Act, 9 U.S.C. §§ 10, 11. Under Section 10 of the FAA, a court may vacate an arbitration award on the bases of corruption, fraud, undue means, evident partiality or corruption in the arbitrators, specified misconduct or misbehavior by the arbitrators, or "where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made." Under Section 11 of the FAA, a court may modify or correct an award in the case of an "evident" or "material" miscalculation of a figure, where the arbitrators have made an award upon a matter not submitted to them, or where there is an error in form not affecting the merits of the controversy. Whether the arbitrators "exceeded their powers" under 9 U.S.C. § 10 depends on whether the arbitrators "had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." DiRussa v. Dean Witter Reynolds, Inc., 121 F. 3d 818, 824 (2nd Cir. 1997). In addition, "an arbitration award may be vacated for manifest disregard of the law." However, "[j]udicial inquiry under the "manifest disregard" standard is [] *extremely limited.*" Carte Blanche (Singapore) Pte., Ltd., 888 F.2d at 265 (emphasis added) (noting the "manifest disregard of the law" standard "means more than error or misunderstanding with respect to the law").

Here, Hartford duly filed a motion to compel the Principals to arbitration based upon their individual liability as well as their status as alter egos of Evergreen. Upon Hartford's Motion, this Court issued its September 7, 2005 Order compelling the Principals to participate in the arbitration. In reliance thereon, Hartford asserted and pursued claims in the arbitration for breach of contract, fraud, and breach of fiduciary duty against the Principals individually, and as alter egos of Evergreen. Accordingly, the Arbitration Panel properly reached a decision on the

individual liability of Mr. Uphouse as well as a decision on the Principals as alter egos of Evergreen. See DiRussa v. Dean Witter Reynolds, Inc., 121 F. 3d at 824 (noting that whether the arbitrators "exceeded their powers" under 9 U.S.C. § 10 depends on whether the arbitrators "had the power, *based on the parties' submissions*...to reach a certain issue") (emphasis added).

The Arbitration Panel's finding on alter ego liability was based on Hartford presenting substantial evidence to show how the Principals were alter egos of Evergreen. The evidence presented included Evergreen bank records, payments made to the Principals (as well as Mr. Uphouse's wife – not an employee of Evergreen), and testimony by the Principals as to how they siphoned off millions of dollars from Evergreen and left it a mere corporate shell. Based upon such evidence, and applying New York law, the Arbitration Panel found that the Principals "disregarded the corporate form of Evergreen in virtually all respects" and "treated the corporation as their 'personal sand box.'" As a result, the Panel properly found that the Principals were "not protected by the Evergreen corporate structure" and are therefore personally liable to Hartford as alter egos of Evergreen. Accordingly, the Panel did not "manifestly disregard the law" in reaching its decision to attach personal liability to the Principals, rather it followed the law. Therefore, its award should be confirmed.

Based upon the Court's Order compelling the Principals to arbitration, and the Arbitration Panel's ultimate finding of alter ego liability against the Principals, judgment should now be entered against Messrs. Caronia, Sr. and Uphouse, jointly and severally, for the full $6,060,550.91 award issued against Evergreen. See, e.g., Pike v. Freeman, 266 F.3d 78, 87-88 (2nd Cir. 2001) (affirming arbitration award against individual on mere basis that arbitrators could have based their award on alter ego finding against individual respondent); Scott v. Prudential Securities, Inc., 141 F.3d 1007 (11th Cir. 1998) (having determined that arbitration panel had jurisdiction to decide the merits of the dispute between individual respondent and corporate claimant and therefore upholding panel's alter ego award against individual respondent as not being "arbitrary and capricious"); and Waveform Telemedia, Inc. v. Panorama Weather

North America, 2007 WL 678731 (S.D.N.Y. March 2, 2007 Slip Copy) (confirming arbitrator's joint and several award against respondents upon arbitrator's finding of alter ego liability).

## IV.

## CONCLUSION

For the reasons stated herein, Hartford respectfully submits that the Court enter Judgment upon the Arbitration Panel's Final Awards for Hartford against:

(1) Respondents Evergreen, Charles Caronia, Sr. and Gary Uphouse in the amount of $6,060,550.91; and

(2) Respondent Gary Uphouse and Respondent Evergreen in the amount of $601,210.

Hartford further respectfully requests that this Court grant any other relief that it deems proper.

Dated: September 11, 2007

Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP

By: /s/
James E. Fitzgerald (JF–5594)
(A Member of the Firm)
Michele Jacobson (MJ–4297)
Seema Misra (SM–2094)
*Attorneys for Hartford Fire Insurance Company*
180 Maiden Lane
New York, New York 10038-4982
(212) 806-5400