# EXHIBIT "B"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of the Application of

HARTFORD FIRE INSURANCE COMPANY,

                              Petitioner,

- against -

THE EVERGREEN ORGANIZATION, INC.,
CHARLES CARONIA, GARY UPHOUSE,
CHARLES CARONIA, JR., and ANDREJS
KRUTAINIS.

                              Respondents.

Case No.
04-CV-3333 (LAK)

**AFFIDAVIT IN SUPPORT OF
MOTION TO DISMISS
HARTFORD'S PETITION TO
COMPEL ARBITRATION
AND/OR VACATE THIS
COURT'S SEPTEMBER 7,
2005 ORDER**

STATE OF  Az       )
                   ) ss.:
COUNTY OF          )
     Maricopa

Gary Uphouse, being duly sworn deposes and says:

1.    I am one of the founders of the Evergreen Organization, Inc. (hereinafter "Evergreen"). From October of 1994 to April of 2004, I was the President of Evergreen. In this capacity, I was responsible for overseeing Evergreen's operations.

2.    I submit this Affidavit in support of the Individual Respondents' motion to dismiss Hartford Fire Insurance Company's ("Hartford") Petition to Compel Arbitration and/or vacate this Court's September 7, 2005 Order.

3     In 1994, Evergreen was incorporated as an S-Corporation under the laws of the State of Pennsylvania.

4.    At the time of corporate formation, Evergreen had two shareholders.

5.    In 1996, I initially transferred 66% of the stock of Evergreen to Charles Caronia, Sr. ("Caronia"), while retaining the remaining outstanding shares. I subsequently repurchased 6% of the shares transferred to Caronia.

6.    In 1996, Evergreen entered into an agreement with Reliance Insurance Company ("Reliance") to become the program manager and claims manager for the Reliance GAP Program.

7.    In July of 2000, Hartford purchased the Reliance GAP Program.

8.    From July of 2000 until September of 2002, Hartford and Evergreen continued to operate under the agreements originally executed between Reliance and Evergreen.

9.    On September 24, 2002, Caronia, as Chief Executive Officer of Evergreen, executed the Program Manager's Agreement ("PMA") and Claims Servicing Agreement ("CSA") between Evergreen and Hartford with respect to Hartford's GAP Program.

10.    From July of 2000 to February of 2004, Evergreen was the Program Manager for Hartford's GAP Program (the "relevant time period"). In this regard, Evergreen performed largely the same functions for Hartford as it did for Reliance with respect to GAP insurance.

11.    During the relevant time period, Hartford was responsible for setting the price for the GAP insurance product sold to the customer.

12.    During the relevant time period, Hartford was ultimately responsible for rendering coverage determinations with respect to the GAP insurance products sold to the customer under the CMA.

13.    Hartford did not provide Evergreen with any underwriting guidelines or manuals with respect to Hartford's GAP Program.

14.    During the relevant time period, Evergreen followed all corporate norms.

15.    During the relevant time period, a board of directors was constituted.

16.    During the relevant time period, Evergreen maintained its own corporate bank accounts with no commingling of personal shareholder funds.

17.    During the relevant time period, Evergreen conducted shareholder meetings.

18.    During the relevant time period, Evergreen recorded and maintained corporate minutes.

19.    During the relevant time period, Evergreen paid Pennsylvania capital stock tax.

20.    During the relevant time period, Evergreen filed all appropriate Pennsylvania state and federal tax returns, including Form K-1 for the individual shareholders.

21.    During the relevant time period, Evergreen maintained general and professional liability insurance policies.

22.    During the relevant time period, Evergreen was appropriately and adequately capitalized to conduct business operations and there are no outstanding bills owed by the corporation.

23.    During the relevant time period, Hartford conducted numerous and exhaustive audits of Evergreen's business operations and corporate accounts and never once indicated that there were any deficiencies or fraud.



Gary Uphouse

Sworn to before me this
6th day of December, 2005

Notary Public

MAUREEN F. AABY
Notary Public   Arizona
Maricopa County
My Commission Expires
December 13, 2005

TOTAL P.05