UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In the Matter of the Application of            )
                                               )   Civil Action No. 1:07-cv-07977-RJS
HARTFORD FIRE INSURANCE COMPANY,               )
                                               )   PETITIONER'S MEMORANDUM
                                 Petitioner,   )   OF LAW IN OPPOSITION TO
                                               )   RESPONDENTS' CROSS-
                                               )   PETITION FOR JUDGMENT
                                               )   CONFIRMING ARBITRATION
                    -against-                  )   AWARD
                                               )
THE EVERGREEN ORGANIZATION, INC.               )
CHARLES A. CARONIA, GARY UPHOUSE,              )
CHARLES CARONIA, JR., and ANDREJS              )
KRUTAINIS,                                     )
                                               )
                                 Respondents.  )
                                               )
                                               )
                                               )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

Petitioner Hartford Fire Insurance Company ("Hartford"), through its attorneys Stroock & Stroock & Lavan LLP, respectfully submits the following memorandum of law in opposition to Respondents The Evergreen Organization, Inc. ("Evergreen"), Gary Uphouse ("Uphouse"), Charles Caronia, Sr. ("Caronia"), Charles Caronia, Jr., and Andrejs Krutainis' (collectively "Respondents") Cross-Petition For Judgment Confirming Arbitration Award.

## **TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ........................................................................................ i

II. BACKGROUND FACTS ................................................................................................ 2

III. ARGUMENT .................................................................................................................... 4

    A. The Court Can Enter Judgment Pursuant To The Arbitration Award. ................... 4

    B. Respondents Do Not Oppose Entry Of Judgment Against Evergreen for $6,661,760 .................................................................................................................. 5

    C. Respondents Do Not Oppose Entry Of Judgment Against Uphouse For $601,210 .................................................................................................................... 5

    D. Judgment Should Be Entered Against Evergreen, Caronia and Uphouse, Jointly And Severally, For $6,661,760.91. ............................................................. 6

IV. CONCLUSION ............................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

Bear Sterns & Co., Inc. v. 1109580 Ontario, Inc.,
    409 F.3d 87 (2d Cir. 2005)...................................................................................................6

Bridgestone/Firestone, Inc. v. Recovery Credit Serv., Inc.,
    98 F.3d 13 (2nd Cir. 1996) ...................................................................................................8

In re Checkmate Stereo & Elec., Ltd.,
    9 B.R. 585 (Bankr. E.D.N.Y. 1981).....................................................................................8

Florasynth v. Pickolz,
    750 F.2d 171 (2d Cir. 1984).................................................................................................5

Folkways Music Publishers, Inc. v. Weiss,
    989 F.2d 108 (2d Cir. 1993).................................................................................................6

JSC Foreign Econ. Assoc. Technostroyexpert v. Int'l Dev. & Trade Serv., Inc.,
    386 F. Supp. 2d 461 (S.D.N.Y.2005)...................................................................................8

Majestic Factors Corp. v. Latino,
    15 Misc. 2d 329 (N.Y. Sup. Ct. 1959) ..............................................................................7, 8

Minnesota Mining & Mfr. Co. v. Superior Court,
    206 Cal. App. 3d 1025 (1988) (citing numerous cases in accord)......................................7

P.S. & A. Realties, Inc. v. Lodge Gate Forest, Inc.,
    205 Misc. 245 (N.Y. Sup. Ct. 1954) ....................................................................................7

State v. Della Villa,
    717 N.Y.S.2d 831 (2000).....................................................................................................8

Wien & Malkin LLP et al. v. Helmsley-Spear, Inc.,
    6 N.Y. 3d 471, 479 (2006) ...................................................................................................6

W.L. Green Indus., Inc. v. Western Intertrading, Ltd., No. 89 CIV. 1864 (CHT),
    1992 WL 122785 (S.D.N.Y. May 27, 1992) .......................................................................8

### STATUTES

FAA, 9 U.S.C. § 1, et seq.................................................................................................................6

Federal Rules of Civil Procedure 23 ...............................................................................................5

I.   **PRELIMINARY STATEMENT**

The Arbitration Panel in this case made an award in favor of Hartford and against the Respondents.  Respondents do not contest the Panel's or this Court's jurisdiction over each of them and do not dispute or challenge the findings of the Arbitration Panel.  Accordingly, Hartford filed a Petition For Judgment Confirming Arbitration Award and attempted to serve counsel for Respondents with a copy of the petition papers.  Respondents, through their counsel refused to accept service and instead worked on filing a Counter-Petition while Hartford was forced to have the U.S. Marshall's office attempt service of its petition papers.  Once Respondents filed a Cross-Petition, they thereby each made an appearance in this case.[1]

Respondents' Cross-Petition For Judgment Confirming Arbitration Award is essentially identical to Hartford's Petition with one exception: Respondents dispute that Charles Caronia, Sr. and Gary Uphouse, the two principals and sole shareholders of Respondent Evergreen, should be vicariously responsible for satisfying the award against Evergreen.  However, Respondents had their "day in court" on that issue during the Arbitration and in post-trial briefs submitted to the Panel.  The Panel, after hearing all of the evidence on this issue and the parties' arguments, concluded that Messrs. Caronia and Uphouse could not hide behind the Evergreen corporate shell and were responsible for Evergreen's debts:

> "[T]he Majority of the Panel are of the opinion that Messrs Uphouse and Caronia [Sr.], the shareholders of the corporation, disregarded the corporate form of Evergreen in virtually all respects.  They treated the corporation as their "personal sand box."  Accordingly, the Panel finds that

---

[1] Respondents have suggested that this Court cannot proceed to hear Hartford's petition since, at the moment, two of the Respondents (Messrs. Uphouse and Krutainis) have evaded personal service of Hartford's petition papers by the U.S. Marshal.  This is a curious position in light of the fact that the same Respondents have appeared in this matter by the same counsel who filed a Cross-Petition on their behalf.  If Respondents Uphouse and Krutainis have appeared in this action and are represented by counsel of record (the Marshall Conway firm) then service on them in this case is effective on their counsel.  For Respondents to say that they can prosecute their Cross-Petition but ignore Hartford's Petition seems to be the height of incongruity.

**Messrs Uphouse and Caronia Sr. are not protected by the Evergreen corporate structure**."

[Ex. "G" to Hartford's Petition for Judgment Confirming Arbitration Award ("Petition"), Interim Final Award, at ¶ 6.i. (emphasis added).]

Respondents cannot escape the Panel's findings regarding the piercing of the Evergreen corporate veil, and cannot avoid the consequences of that finding. The Panel's decision must be honored and judgment entered as requested by Hartford, not as wished by Respondents.

## II.    BACKGROUND FACTS

On April 30, 2004, Hartford served a demand for arbitration on Respondents. At the same time, Hartford filed in this Court a verified petition in aid of arbitration, a motion for a temporary restraining order and preliminary injunction, and a request for attachment. That request for relief, over the objections by Respondents, was heard and subsequently granted by Judge Lewis A. Kaplan in May 2004.

Hartford and Evergreen then commenced the arbitration process before a three-member panel in New York, New York. However, Caronia, Uphouse, Charles Caronia, Jr., and Andrejs Krutainis (collectively, the "Individual Respondents ") refused to participate in the arbitration. Accordingly, on August 11, 2005, Hartford filed a further petition for an order compelling the Individual Respondents to appear in the arbitration on the grounds that they were agents and alter egos of Evergreen whose conduct gave rise to Hartford's claims in the arbitration. The Individual Respondents filed no formal answer to Hartford's petition, but wrote the Court declaring that the Court lacked personal jurisdiction over the Individual Respondents. Judge Kaplan granted Hartford's motion to compel the Individual Respondents to participate in the arbitration. The Individual Respondents then filed a motion to vacate the Court's ruling. On January 16, 2007, Judge Kaplan rejected the Individuals Respondents' argument that the Court had no jurisdiction over them, and reaffirmed his order noting that although the Individual Respondents made a "deliberate decision" not to oppose Hartford's petition, he still would have

2

granted Hartford's motion on the merits. [Ex. "G" to Petition, January 17, 2006 Order, at p. 12.] The Individual Respondents then filed a notice of appeal, but withdrew it on March 7, 2006.

Respondents appeared and participated in the arbitration hearing held from January 8, 2007, through January 12, 2007. At the hearing, Hartford asserted claims against Caronia and Uphouse individually for their own tortious conduct (breach of fiduciary duty and fraud) and for their conduct as Evergreen's subagents. Hartford also asserted claims against Caronia and Uphouse for their vicarious liability as alter egos of Evergreen and requested that the Panel determine that the corporate veil of Evergreen be pierced. The parties submitted documentary and testimonial evidence on these issues and specifically (and extensively) briefed the issue of the vicarious liability of Caronia and Uphouse (as alter egos of Evergreen).

On April 2, 2007, the Panel issued its First Interim Award finding that:

(1) Uphouse is individually liable, and jointly and severally liable with Evergreen, in the amount of $501,210 for his direct role in underwriting the JM&A account..

(2) Evergreen is liable for breach of fiduciary duty in the amount of $5,854,453 – representing $557,000 for its unauthorized diversion of premium trust funds, $4,796, 243 for its breach of the Program Manager's Agreement, and $501,210 for enrollments received in the underwriting of the JM&A Account, and

(3) Evergreen's corporate veil is pierced and its principals, Caronia and Uphouse, are therefore "not protected by the Evergreen corporate structure."

Thereafter, pursuant to the agreement to arbitration and at the invitation of the Panel, Hartford made a motion for an award of its attorney's fees and costs. Respondents served an opposition to that motion. On July 9, 2007, the Arbitration Panel issued a Second Interim Final Award, which awarded Hartford 75% of its attorney's fees and costs incurred in connection with the arbitration. On July 21, 2007, the Arbitration Panel issued an Amended Second Interim Final Order specifying the exact dollar amount of the attorney's fees and costs awarded to Hartford in the amount of $807,307.91. That Order further noted that Uphouse is required to personally pay Hartford $100,000 of that amount.

3

Respondents did not move for the Arbitration Panel to reconsider any portion of its Interim Final Award, its Second Interim Final Award, or its Amended Second Interim Final Award (collectively, the "Final Awards").

In early July 2007, Evergreen paid Hartford $405,622.86 in partial satisfaction of the Arbitration Panel's award. That amount, according to Uphouse and Caronia, represented the balance of Evergreen's assets, which this Court ordered Evergreen to place in a fiduciary account by its June 8, 2004 Order.

On or about September 10, 2007, Hartford filed its Petition for Judgment Confirming Arbitration Award (the "Petition") and served Respondents' counsel with the same. The same day, Respondents' counsel advised that they would not accept service of the Petition on Respondents' behalf. Hartford therefore retained the U.S. Marshals Service to serve the Respondents with the Petition, pursuant to Federal Rules of Civil Procedure 23.[2] Shortly thereafter, on or about October 17, 2007, Respondents made a general appearance in this action by filing their own Cross-Petition For Entry of Judgment Affirming Arbitration Award. Hartford thereafter served its Petition upon Respondents' counsel on behalf of Respondents.

### III.    ARGUMENT

#### A.    The Court Can Enter Judgment Pursuant To The Arbitration Award.

The Second Circuit has set forth the standard for confirmation of an arbitration award: "confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Florasynth v. Pickolz*, 750 F.2d 171, 176 (2d Cir. 1984). "Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir.

---

[2] The U.S. Marshals Service has now completed service upon Evergreen, Caronia, and Charles Caronia, Jr. However, the Marshals Service has made several attempts to complete service upon Andrejs Krutainis and Gary Uphouse at their last known residences, respectively, but have been unsuccessful thus far.

4

1993).  "It is well settled that judicial review of arbitration awards is extremely limited . . . . An arbitration award must be upheld when the arbitrator offers even a barely colorable justification for the outcome reached."  *Wien & Malkin LLP et al. v. Helmsley-Spear, Inc.*, 6 N.Y. 3d 471, 479 (2006) (citations omitted).  An "arbitration decision must be confirmed if there is *any* basis for upholding the decision and 'if there is even a barely colorable justification for the outcome reached.'"  *Bear Sterns & Co., Inc. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005).

The Arbitration between the parties here was commenced pursuant to the Arbitration Provision in Program Manager's Agreement, signed by the parties, and governed by the Federal Arbitration Act ("FAA").  See FAA, 9 U.S.C. § 1, et seq.  Therefore, and pursuant to the FAA, this Court has jurisdiction to enter judgment upon the Arbitration Panel's Final Awards.  Indeed, the parties agree that the Court should enter a judgment upon the award at this time.

**B.    Respondents Do Not Oppose Entry Of Judgment Against Evergreen for $6,661,760.**

As set forth above, the Arbitration Panel awarded Hartford damages of 6,661,760.71 against Evergreen.  Respondents do not oppose Hartford's request for entry of judgment against Evergreen for $6,661,760.71.  [Respondents' Memorandum of Law at pp. 4, 8-10.]  Therefore, judgment against Evergreen should be entered accordingly.

**C.    Respondents Do Not Oppose Entry Of Judgment Against Uphouse For $601,210.**

During the Arbitration, Hartford asserted that Caronia and Uphouse should be held individually liable for any torts they committed or which they aided and abetted.  [*See* Ex. "D" to Petition, Hartford's Arbitration Brief, at pp. 20-24 (Section III.B. "The Principals' Personal Liability").]  The Arbitration Panel awarded $601,210 against Uphouse for his individual liability for his own tortious conduct (i.e., $501,210 for unauthorized writing of the JM&A Account (calculated at $3/enrollment fee 167,070 enrollments), and $100,000 for attorney's fees and costs.  [*See* Ex. "D" to Petition, Interim Final Award, at ¶ 6.ii; and Ex. "F" to Petition, Amended 2nd Interim Final Award, at ¶ 1.]  Respondents agree that judgment should be entered individually against Uphouse in the amount of $601,210, as set forth above.  [Respondents' Memorandum of Law at p.10.]

5

Hartford also alleged that Caronia personally aided and abetted Evergreen's breach of fiduciary duty and Uphouse's fraudulent conduct with respect to the JM&A account. However, the Arbitration Panel did not find Caronia to be individually liable for his own tortious acts. Accordingly, the parties agree that judgment can be entered in favor of Caronia on the claims against him for his individual liability.[3]

**D.     Judgment Should Be Entered Against Evergreen, Caronia and Uphouse, Jointly And Severally, For $6,661,760.91.**

Where a corporation is found to be a mere alter ego of its principals, the corporation is deemed to be nothing more than an agent or instrumentality of those principals. *See, e.g., Majestic Factors Corp. v. Latino*, 15 Misc. 2d 329, 330 (N.Y. Sup. Ct. 1959) (finding that because corporation was merely an agent, instrumentality, and dummy of the five defendants who formed the corporation, defendants were liable for corporation's debts and obligations).

Moreover, once a corporation's veil is pierced, its principals are personally held jointly and severally liable for the full amount of the corporation's debts and obligations.[4] *See, e.g., P.S. & A. Realties, Inc. v. Lodge Gate Forest, Inc.*, 205 Misc. 245, 255-256 (N.Y. Sup. Ct. 1954) (holding that where there was complete disregard of a corporate organization, the corporation was considered a mere agency or instrumentality of the defendants' business enterprises, such that the defendants were held <u>jointly and severally liable</u> for damages due to plaintiffs as a result of those business enterprises); *JSC Foreign Econ. Assoc. Technostroyexpert v. Int'l Dev. & Trade Serv., Inc.*, 386 F. Supp. 2d 461 (S.D.N.Y.2005) (applying New York law and finding defendants were alter egos of a corporation such that they were on an individual basis <u>jointly and

---

[3]  This is distinct and apart from the Panel's findings regarding the vicarious liability of Caronia and Uphouse because of the corporate veil being pierced.

[4]  This principle is well recognized under New York law, and most jurisdictions throughout the country. *See, e.g., Minnesota Mining & Mfr. Co. v. Superior Court*, 206 Cal. App. 3d 1025, 1028 (1988) (finding that where the alter ego doctrine applies, each of several shareholders are jointly and severally liable as a principal or partner of a corporation *"[r]egardless of the size of a shareholder's holding"*) (emphasis added) (citing numerous cases in accord).

6

severally liable to satisfy the judgment entered by the court against the corporation); *In re Checkmate Stereo & Elec., Ltd.*, 9 B.R. 585, 622 (Bankr. E.D.N.Y. 1981) (reasoning that where corporate fiction could be disregarded due to defendants' fraudulent use of corporations, defendants should be held jointly and severally liable as to not burden the bankruptcy estates in determining which defendant received property from the fraudulent transfer); *W.L. Green Indus., Inc. v. Western Intertrading, Ltd.*, No. 89 CIV. 1864 (CHT) 1992 WL 122785 (S.D.N.Y. May 27, 1992) (finding defendant parent corporation and defendant subsidiary jointly and severally liable to plaintiff where subsidiary was mere alter ego or agent of parent corporation); *State v. Della Villa*, 717 N.Y.S.2d 831, 840 (2000) (finding three principals of corporation jointly and severally liable where corporation's veil was pierced); *Bridgestone/Firestone, Inc. v. Recovery Credit Serv., Inc.*, 98 F.3d 13, 18-19 (2nd Cir. 1996) (affirming award against both corporate defendants and individual defendant where "two corporate defendants were no more than alter egos" of individual defendant such that all defendants should be liable for the full amount of damages); *Majestic Factors Corp.*, 15 Misc. 2d at 331.

  The law is clear that once the principals of a corporation so disregard the corporate form that its veil may be pierced, the corporation ceases to exist as a separate entity. From then on, the principals cannot rely on the corporate structure to limit their exposure for the corporation's liabilities. In other words, they are the corporation and are liable individually for its debts. Any other result would be contrary to the very purpose of protecting proper corporations, but not allowing principals to hide behind a sham corporation.

  Hartford's claims against the Principals for personal liability were based upon (a) the Principals' conduct in aiding and abetting Evergreen's breach of fiduciary duty, (b) their roles as Hartford's subagents, and (c) their own fraudulent conduct. [*See* Ex. "A" attached hereto, Hartford's Opening Arbitration Brief, at pp. 20-24 (Section III.B. – "The Principals Personal Liability").] However, Hartford's claims against Caronia and Uphouse for vicarious liability (as alter egos of Evergreen) were based upon their conduct in failing to comply with the requisite formalities in running Evergreen as a legitimate corporation – specifically their "domination and

control of Evergreen through the commingling of corporate funds, failure to conduct shareholders' or directors' meetings, and use of Evergreen's corporate accounts as their own personal ATM machines." [*See* Ex. "A" attached hereto, Hartford's Opening Arbitration Brief, at p. 27; *see also id.* at pp. 24-28, (Section III.C. – "The Principals Are Also Personally Liable As Alter Egos Of Evergreen.").] Thus, Hartford made clear in the Arbitration that these were two distinct bases of liability that were in no way dependent on each other.

During the Arbitration, the Panel considered evidence and arguments by the parties directly on the issue of whether Evergreen should be afforded corporate protection so that the principals could be shielded from the corporation's debts. The Panel concluded that Evergreen should not be allowed such protection because of how the principals of Evergreen – Caronia and Uphouse – ran the company and left it a penniless shell. Ironically, Respondents argue, at p. 15 of their Memorandum of Law in support of their Cross-Petition, that Hartford is attempting in this Court to "litigate or relitigate" the issue of piercing the corporate veil. Not so. Hartford does not need to do that, since the Panel already decided the issue during the Arbitration.[5] All this Court is being asked to do is enforce that finding that the corporate veil was pierced – not ignore it as implored by Respondents.

Respondents' sole argument in support of their request that this Court ignore the Panel's piercing the corporate veil findings that the wording of one part of the award says that Caronia is not personally liable, and that Uphouse is only personally liable for $601,210.[6] However, Respondents know full well that such reference is to Hartford's claims for individual liability of Caronia and Uphouse <u>for their own personal acts</u> and not as the alter ego of a corporation for

---

[5] Moreover, Respondents waived their right to contest this issue before this Court, when they made a "deliberate decision," as Judge Kaplan noted, not to oppose Hartford's Petition to compel the Individual Respondents to appear in the arbitration.

[6] Respondents only make one passing reference to the Panel's significant finding regarding the piercing of the corporate veil. [See Respondents' Memorandum of Law at p. 20 ("The Arbitration Panel even found that 'Messrs. Uphouse and Caronia, Sr. are not protected by the corporate structure.'").]

8

which they were the principals.  In a truly desperate attempt to persuade this Court that the Panel's award should be read as they say, Respondents claim that "Perhaps the Dissent best articulated the sentiment of the Arbitration Panel."  Unfortunately for Respondents, the Dissent is not the decision of the Panel, nor is the Dissent's view of what the Panel did the decision of the Panel.  The Panel's decision is clear and attempts to contort it should be rejected.

If Respondents were correct that the Panel ultimately meant for Messrs. Caronia and Uphouse to escape liability, it would not have specifically found that the Evergreen corporate veil should be pierced.  Nor would it have so emphatically stated that "**The Panel finds that Messrs Uphouse and Caronia Sr. are not protected by the Evergreen corporate structure**."  (Ex. "D" to Petition, Interim Final Order, at ¶ 6.i.)  For those words to be honored, Respondents must be held accountable as alter egos responsible for the corporate debts of Evergreen.

Respondents through the Arbitration, and even now, try to ignore the distinction between the personal liability of Uphouse and Caronia for their misfeasance, malfeasance, or nonfeasance related to their duties to Hartford, and the vicarious liability for the debts of the corporation (Evergreen) they used as their "personal sandbox."  While Caronia may have been absent from the Evergreen office most of the time and not directly involved with some of the work performed (or not performed) by Evergreen pursuant to the Program Managers' Agreement, he was still Chairman of the Board of Evergreen and the principal shareholder (60%).[7]  As was shown at the hearing, Caronia had no problem (even from afar) diverting millions of dollars into his pockets and ignoring the required formalities of the Evergreen corporate structure – all with the knowledge of his partner in the Evergreen venture, Uphouse.   Try as he might, Caronia cannot escape his vicarious liability for the debts of Evergreen by relying on the fact that he did not know the depth or extent of the shenanigans that was ongoing at Evergreen.  It is clear the

---

[7] As set forth in two affidavits, which Uphouse previously submitted to this Court in the proceedings before Judge Kaplan, Caronia held 60% of Evergreen's stock and Uphouse held the remaining 40%.  [Exhibit "B" attached hereto at ¶¶ 4-5; Ex. "C" attached hereto at p.1.]

9

Arbitration Panel found these shenanigans at Evergreen were enough to pierce the corporate veil and expose its only two shareholders – Caronia and Uphouse – to vicarious liability for its debts.

In the end, Respondents' cannot use the Arbitration Panel's rulings on Caronia and Uphouse's <u>personal liability</u> as a defense to the Panel's ruling on their <u>vicarious liability</u> (because of the piercing of the corporate veil).  Simply put, the Panel's ruling on Caronia and Uphouse's liability for torts Hartford alleges they personally committed in no way limits their vicarious liability for the award issued against their alter ego, Evergreen.

## IV.     <u>CONCLUSION</u>

For the reasons stated herein, Hartford respectfully submits that the Court deny Respondents' Cross-Petition and reject Respondents' Proposed Judgment.  Hartford further respectfully submits that the Court should enter Judgment upon the Final Awards for Hartford against Respondents Evergreen, Charles Caronia, Sr., and Gary Uphouse, jointly and severally, in the amount of  $6,661,760.91.

Dated: October 31, 2007                    Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP

By:     _____/s/_____
        James E. Fitzgerald (JF–5594)
         (A Member of the Firm)
         Michele Jacobson (MJ–4297)
         Seema Misra (SM–2094)
*Attorneys for Hartford Fire Insurance Company*
180 Maiden Lane
New York, New York 10038-4982
(212) 806-5400