UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Application of<br><br>HARTFORD FIRE INSURANCE COMPANY,<br><br>                         Petitioner,<br><br>  - against -<br><br>THE EVERGREEN ORGANIZATION, INC., CHARLES CARONIA, SR., GARY UPHOUSE, CHARLES CARONIA, JR., and ANDREJS KRUTAINIS,<br><br>                         Respondents. | Civil Action No.07-CV-7977 (RJS)<br><br>**RESPONDENTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF CROSS-PETITION FOR JUDGMENT CONFIRMING ARBITRATION AWARD** |

Respondents The Evergreen Organization, Inc. ("Evergreen), Charles Caronia, Sr. ("Caronia, Sr.), Gary Uphouse ("Uphouse"), Charles Caronia, Jr. ("Caronia, Jr."), and Andrejs Krutainis ("Krutainis") respectfully submit this rely memorandum of law in further support of Respondents Cross-Petition for Judgment Confirming Arbitration Award.

## I. INTRODUCTION

Hartford's opposition can be distilled to a single essential argument: Once the corporate veil is pierced, an innocent shareholder (*i.e.*, Caronia, Sr.), as well as the wrongdoer (*i.e.*, Mr. Uphouse), are somehow "vicariously liable" for the entirety of the award. As discussed herein, Hartford is wrong on the facts and the law. We respectfully submit that the Court must enter a judgment based upon what is plainly stated in the award and nothing else.

## II. FACTUAL BACKGROUND

### A. The Award

The arbitration award is clear and unambiguous. Against Evergreen, the Panel awarded Hartford: (1) $517,000 ($440,000 plus $117,000 in interest) for retained premium (Interim Final Order ("Order"), ¶ 1); (2) $4,796,243 in reimbursement for claims paid with regard to the JM&A account (*id.*, ¶ 5.xi.); and (3) $807,307.91, comprising 75% of Hartford's allowable attorneys' fees and costs (*id.*, ¶ 8 and Amended 2nd Interim Final Order, ¶ 1).

"In respect of the JM&A account (and in respect of that account only)," the Panel found Mr. Gary Uphouse "jointly (with Evergreen) and severally liable for damages in the amount of $501,210 (an amount based on a $3 enrollment fee multiplied by 167,000 enrollments[)]." Order, ¶ 6.ii. Mr. Uphouse was also found "jointly (with Evergreen Organization) and severally liable for said attorneys' fees and costs up to maximum of $100,000." *Id.*, ¶ 8.

The arbitrators did not believe that Mr. Caronia, Sr. did anything wrong. As such, they did "<u>not</u> find him personally liable." *Id.*, ¶ 6.ii. (emphasis added). Indeed, because "there is no evidence that any other of them knew of, or supported, or encouraged, or condoned, Mr. Uphouse's actions," as to Mr. Caronia, Sr., Mr. Kruitanis and Mr. Caronia, Jr., the panel held that "[n]o award is made against them personally." *Id.*, ¶ 7 (emphasis added).

The Panel specifically denied "[a]ny and all other claims . . . ." *Id.*, ¶ 12.

### III.   ARGUMENT

#### A.   Piercing the Corporate Veil

We do not dispute that the Panel found "Messrs. Uphouse and Caronia, Sr. are not protected by the Evergreen corporate structure." *Id.*, ¶ 6.i. We also do not dispute that the Panel found "Mr. Uphouse, by his actions and by virtue of the lack of corporate protection," jointly and severally liable for certain limited damages. As discussed below, this is entirely consistent with New York law that once the corporate form is disregarded, an individual wrongdoer may be found personally liable.

Hartford now argues that once the corporate form is disregarded, every single shareholder is liable – without regard to fault; namely that an innocent shareholder (*i.e.*, Mr. Caronia, Sr.) is "vicariously liable" for the misconduct, torts and wrongdoing of the corporation and other shareholders. Hartford's argument is remarkably free of citation to any relevant case law for one simple reason – there is none. Hartford also ignores the undisputed fact that the Panel made no award of any kind, in any capacity, against Messrs. Caronia, Sr. Krutainis and Caronia, Jr. *See id.*, ¶ 6.iii. & 7 ("[Panel] does not find [Mr. Caronia, Sr.] personally liable[.]") and ("No award is therefore made against [Messrs. Caronia, Sr., Krutainis, and Caronia, Jr.] personally.").

The decision of the New York Court of Appeals in *Morris v. New York State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 623 N.E.2d 1157, 603 N.Y.S.2d 807 (1993), is recognized as "the leading New York case on piercing the corporate veil." *Mars Electronics of N.Y., Inc. v. U.S.A. Direct, Inc.*, 28 F. Supp.2d 91, 96 (E.D.N.Y. 1998). The Second Circuit has recognized *Morris* as stating a far stricter modern standard for analyzing when a court should pierce the corporate veil. *Thrift Drug, Inc. v. Universal Prescription Adm'rs*, 131 F.3d 95, 97 (2d Cir.

1997). At the outset, Hartford's repeated reliance on pre-1993 New York case law must be rejected, since it utilizes a different and outdated legal standard.

In *Morris*, the Court of Appeals stated the applicable principle as follows: "[P]iercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; <u>*and*</u> (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury." 623 N.E.2d at 1160-61 (emphasis added).

*Morris* marked a departure from the previous jurisprudence of the Second Circuit on this point. As explained in *Mars Electronics*:

> Prior to *Morris*, the Court of Appeals for the Second Circuit had interpreted New York law as permitting a defendant to pierce the corporate veil in either of two situations: " 'to prevent fraud or other wrong,' or in the case of complete domination and control, as 'where a parent dominates and controls a subsidiary.' " *Thrift Drug, Inc. v. Universal Prescription Adm'rs*, 131 F.3d 95, 97 (quoting *Carte Blanche (Singapore) Pte, Ltd. v. Diners Club Int'l, Inc.*, 2 F.3d 24, 26 (2d Cir. 1993). *Morris* rejected this either/or dichotomy and it is now clear that under New York law a plaintiff seeking to pierce the corporate veil must prove both complete domination and that the domination was used to commit a fraud with respect to the transaction at issue.

28 F. Supp.2d at 97.

In *Thrift Drug*, the Second Circuit vacated and remanded the decision of the trial court because it followed the reasoning of pre-*Morris* cases. 131 F.3d at 97. Specifically, the court held that there were no findings as to the second prong of the *Morris* test, that the domination was used to commit a wrong that resulted in the plaintiff's injury. *Id.* at 98.

The arbitrators seemingly held that the first prong – domination – was met as to both Mr. Uphouse and Mr. Caronia by virtue of the lack of formality in operating Evergreen. For this reason, they stated that Messrs. Uphouse and Caronia were "not protected by the Evergreen

3

corporate structure." However, mere domination is insufficient to impose personal liability upon someone who did nothing wrong. As to the second prong – using such domination to commit a wrong causing injury – the arbitrators found it met to a limited extent as to only Mr. Uphouse. Therefore, the arbitrators imposed some limited personal liability on Mr. Uphouse, but *none* on Mr. Caronia, Sr., Mr. Caronia, Jr. and Mr. Krutainis.

Hartford's asserts: "The law is clear that once the principals of a corporation so disregard the corporate form that its veil may be pierced, the corporation ceases to exist as a separate entity." Brief at 7. This broad statement, unsupported by citation to any authority, is wrong. Veil-piercing relates only to a particular individual for a particular transaction.[1] In the instant case, the Panel limited its award against Mr. Uphouse to a single transaction (*i.e.*, JM&A), not to the many other transactions that Hartford complained of.

### B.   Messrs. Caronia, Sr. and Uphouse Are Not Vicariously Liable.

Hartford labors to draw a distinction that, for some unexplained reason, the award's finding of "no personal liability" as to three individuals and limited personal liability as to a fourth contains a silent exception for "vicarious liability." Hartford *originally* stated that the "The Principals Are Also <u>Personally Liable As Alter Egos</u> of Evergreen." Hartford's Opening Arbitration Brief, Heading for Section III.C. Hartford *now* states to this Court that it made "claims against Caronia [Sr.] and Uphouse for <u>vicarious liability</u> (as alter egos of Evergreen)." Brief at 7 (emphasis in original). Hartford is wrong on the law and wrong in representing the nature of the award.

---

[1] For example, the court in *Mars Electronics* found sufficient evidence to pierce the veil in relation to two transactions, but insufficient evidence as to eight other transactions. *See* 28 F. Supp.2d at 98-100. In *Mistrulli v. McFinnigan, Inc.*, 39 A.D.3d 606, 834 N.Y.S.2d 271 (2d Dep't 2007), the court found neither of the elements in *Morris* were met as to either of the two defendants.

As the New York Court of Appeals has stated: "*True* vicarious liability, [is that] in which, by virtue of the parties' relationship, the conduct of one individual is artificially imputed to another who 'has played no part in it [and] has done nothing whatever to aid or encourage it' (see, Prosser and Keeton, Torts § 69, at 499 [5th Lawyer's ed.]." *People v. Byrne*, 77 N.Y.2d 460, 466, 570 N.E.2d 1066, 1068, 568 N.Y.S.2d 717, 719 (1991) (emphasis in original). The classic example is holding an employer vicariously liable for the acts of an employee in the scope of employment: "The premise of *respondeat superior* is that one who is without fault may be held vicariously liable for the wrongdoing of another. W. Prosser, Law of Torts 458 (4th ed.1971)." *Kahn v. Chase Manhattan Bank, N.A.*, 760 F. Supp. 369, 373 (S.D.N.Y. 1991) (internal citation omitted).

As demonstrated above, veil-piercing is not synonymous with the imposition of vicarious liability. Veil-piercing does not impose liability upon an innocent shareholder simply based on status, without regard to fault. This is black-letter law: "<u>An individual's liability</u> for the tortious conduct of a corporation <u>depends upon that individual's acts</u>, and not upon any theory of vicarious liability based upon the individual's status as an owner." 18A Am. Jur.2d, *Corporations*, §726 (2007) (emphasis added). Hartford's assertion that Mr. Caronia, Sr. is responsible for the tortious conduct of Mr. Uphouse and Evergreen because of "vicarious liability," or otherwise, is baseless.

New York does not recognize vicarious liability for shareholders, directors, or officers. Indeed, the *raison d'etre* of modern corporate law is that a shareholder is <u>never</u> vicariously liable – liable without fault and solely because of his relationship as a shareholder of a corporation – for the corporation's obligations. "The law permits the incorporation of a business for the very

purpose of escaping personal liability." *Bartle v. Home Owners Co-op.*, 309 N.Y. 103, 106, 127 N.E.2d 832, 833 (N.Y. 1955).

In *Connell v. Hayden,* 83 A.D.2d 30, 443 N.Y.S.2d 383 (2d Dep't 1981), the court held that: "In the absence of constitutional, statutory or charter provisions to the contrary, a stockholder is not merely by reason of his stock interest, liable at common law for any of the obligations of a corporation, whatever their character and in whatever manner incurred. *Id.* at 402 (citations omitted). Similarly, the court ruled that: "A director, officer or agent is not liable for torts of the corporation or of other officers or agents merely because of his office and he is liable only for torts in which he participated or which he authorized or directed." *Connell,* 443 N.Y.S.2d at 402 (citations omitted). Other cases make the same point. *See, e.g., Sasso v. Cervoni,* 985 F.2d 49, 50 (2d Cir. 1993) (mandating that more than an individual's status in the corporation is necessary to hold him or her liable for a company's failure to fulfill an obligation); *Ez-Tixz, Inc. v. Hit-Tix, Inc.*, No. 93 Civ. 3791 (CSH),1995 WL 77589 at * 6 (S.D.N.Y. Feb. 27, 1995) ("New York law, however, does not recognize vicarious liability for directors, officers, agents or shareholders."); *Paciello v. Patel*, 83 A.D.2d 73, 77 443 N.Y.S.2d 403, 406 (2d Dep't 1981) ("[N]either the common law nor section 1505 of the Business Corporation Law imposes vicarious liability upon a shareholder . . . for the tortuous acts of his coshareholders, officers or employees.").[2]

Not a single case cited by Hartford holds to the contrary. Two cases are irrelevant. One is based on the text of the Bankruptcy Code. *See In re Checkmate Stereo and Electronics, Ltd.*,

---

[2] *See also We're Assocs. Co. v. Cohen, Stracher & Bloom, P.C.*, 103 A.D.2d 130, 134, 478 N.Y.S.2d 670 (2 Dep't 1984), *aff'd,* 65 N.Y.2d 148, 490 N.Y.S.2d 743, 480 N.E.2d 357 (1985) (granting motion to dismiss on behalf of individual shareholders); *Kouner v. Koplovitz*, 175 A.D.2d 531, 533, 572 N.Y.S.2d 959, 962 (3d Dep't 1991) (dismissing claim against all individuals except those who participated in the questioned actions).

9 B.R. 585, 622 (Bkrtcy. E.D. N.Y. 1981) ("[I]n view of the change in the statutory language [of the Bankruptcy Code], it is not necessary to pierce the corporate veil . . . ."). The other involves the relationship between a parent corporation and its subsidiary and pre-dates *Morris*. *W.L. Green Industries, Inc. v. Western Intertrading, Ltd*, 1992 WL 122785 (S.D.N.Y. May 27, 1992). The remainder of Hartford's cases support Respondents' position and hold an individual liable because he or she actually did something wrong that caused the plaintiffs' injuries.[3]

As made clear by *Morris*, veil-piercing is permitted only when a party has played a part in the injury – the party has used domination of the corporation to commit a wrong. After *Morris*, it is clear that veil-piercing holds a party directly liable for his own acts by denying that party the defense of the corporate shield.

None of the cases cited by Hartford stand for the proposition that an innocent shareholder who did nothing wrong (*i.e.*, Mr. Caronia, Sr.) is somehow "vicariously liable" for the acts of others (*i.e.*, Evergreen and Mr. Uphouse).

### 1. Mr. Caronia, Sr. is Not Liable in Any Respect.

The Panel's Order found that Mr. Caronia, Sr. did not participate in any "wrong" with respect to the JM&A account. Order at ¶ 6.iii. In fact, the Panel was not even "convinced that Mr. Caronia, Sr. was aware that Mr. Uphouse had acted wrongly . . . ." *Id*. Because of this, the Panel "does not find him personally liable." *Id*. Moreover, the Panel found that "there is no evidence that [Mr. Caronia, Sr.] knew of, or supported, or encouraged, or condoned, Mr.

---

[3] *See, e.g., S. & A. Realties v. Lodge Gate Forest*, 205 Misc. 245, 253 (N.Y. Sup. Ct. 1954) (individual who committed fraud and those who aided him held liable); *JSC Foreign Economic Association Technostroyexport v. International Development and Trade Services, Inc.*, 386 F. Supp.2d 461 (S.D.N.Y. 2005) (individuals who diverted funds following notice of claim against corporation held liable); *State v. Della Villa*,186 Misc.2d 490, 501, 717 N.Y.S.2d 831, 840 (N.Y. Sup. Ct. 2000) (individuals involved in operating an illegal waste disposal facility held liable); *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 18 (2d Cir. 1996) (individual that was "misusing" two corporations held liable).

Uphouse's actions." *Id.* at ¶ 7. The Panel again reiterated: "No award is therefore made against [Mr. Caronia, Sr.]." *Id.* The Panel's Order is entirely consistent with New York law. Because the Panel found that Mr. Caronia, Sr. did not use his position to actively participate in any wrong, the Panel did not hold him personally liable in any respect.

Hartford argues that the Panel only made the ruling as to Mr. Caronia's "individual liability", as opposed to his "vicarious liability." The Order makes no such distinction. Indeed, the Order clearly holds Mr. Caronia, Sr. not personally liable in *any and all* respects.

### 2.    Mr. Uphouse is Not Liable for $6,661,760.91.

Hartford's attempt to impose the full amount of the award against Evergreen on Mr. Uphouse is contradicted by the Panel's Order. "In respect of the JM&A account (and in respect of that account only)," the Panel found Mr. Gary Uphouse "jointly (with Evergreen) and severally liable for damages in the amount of $501,210 (an amount based on a $3 enrollment fee multiplied by 167,000 enrollments[)]." Order at ¶ 6.ii. (emphasis added). Because of "his actions and by virtue of the lack of corporate protection", the Panel found Mr. Uphouse personally liable with respect to the JM&A account only. *Id.* This is entirely consistent with New York law. Moreover, the Panel also found Mr. Uphouse jointly and severally liable with Evergreen for attorneys' fees and costs up to $100,000. *Id.* at ¶ 8.

The very fact that the Panel's Order makes awards against Evergreen and two separate and distinct awards jointly and severally against Mr. Uphouse and Evergreen undermines any argument that the Panel intended to impose the entire award against Mr. Uphouse. Indeed, with respect to the JM&A account, the Panel found Evergreen liable for $4,796,243, while holding Mr. Uphouse and Evergreen jointly and severally liable for only $501,210. Moreover, the Panel found Evergreen liable for $807,307.91 in attorneys' fees and costs, while holding Mr. Uphouse

and Evergreen jointly and severally liable for attorneys' fees and costs up to $100,000. Once the individuals were "not protected by . . . corporate form", the arbitrators still treated Evergreen and Mr. Uphouse as separate and distinct, and awarded damages accordingly. The Panel made no award against Mr. Uphouse or any other person for Evergreen's entire obligations. When a person was found jointly and severally liable with Evergreen, the arbitration award stated that clearly. The converse is equally clear - when the individuals were found not liable, they are not liable to Hartford, either directly or indirectly.

Hartford's argument is further undercut by the fact that the award consists of several components, including the unauthorized diversion of premium, for which the Panel found no one personally liable. The Panel's Order provides no basis for Hartford's attempt to impose the full amount of the award against Evergreen upon Mr. Uphouse.

### C.  The Arbitrators' Award Cannot be Altered.

It is evident that Hartford believes the entirety of its damages awarded against Evergreen should also have been imposed upon Messrs. Caronia, Sr. and Uphouse. Having chosen to arbitrate rather than litigate their dispute, however, Hartford has no grounds to complain. As stated by the Second Circuit in *Sperry Intern. Trade, Inc. v. Government of Israel*, 689 F.2d 301, 306 (2d Cir. 1982):

> New York law gives arbitrators substantial power to fashion remedies that they believe will do justice between the parties. Thus, in *Sprinzen v. Nomberg*, 46 N.Y.2d 623, 629, 415 N.Y.S.2d 974, 389 N.E.2d 456 (1979), the New York Court of Appeals stated as follows:
>
>> An arbitrator's paramount responsibility is to reach an equitable result, and the courts will not assume the role of overseers to mold the award to conform to their sense of justice. Thus, an arbitrator's award will not be vacated for errors of law and fact committed by the arbitrator ....

9

Under New York law arbitrators have power to fashion relief that a court might not properly grant. In *Rochester City School District v. Rochester Teachers Association,* 41 N.Y.2d 578, 394 N.Y.S.2d 179, 362 N.E.2d 977 (1977), the court reversed the vacation of an arbitration award that ordered the petitioner school district to grant sabbaticals to certain teachers, stating as follows:

> In the final analysis "Arbitrators may do justice" and the award may well reflect the spirit rather than the letter of the agreement .... Thus courts may not set aside an award because they feel that the arbitrator's interpretation disregards the apparent, or even the plain, meaning of the words or resulted from a misapplication of settled legal principles. In other words a court may not vacate an award because the arbitrator has exceeded the power the court would have, or would have had if the parties had chosen to litigate, rather than to arbitrate the dispute. Those who have chosen arbitration as their forum should recognize that arbitration procedures and awards often differ from what may be expected in courts of law.

*Id.* at 582, 394 N.Y.S.2d 179, 362 N.E.2d 977 (citation omitted).

Hartford never sought to modify, correct, vacate or change the award. Hartford cannot now (in a petition to confirm the award) seek to unilaterally shift the damages awarded and change the amount of personal liability imposed by the arbitrators in its favor.

## IV. CONCLUSION

For all the foregoing reasons, the Court should grant Respondent's Cross-Petition for Confirmation, deny Hartford's Petition, and award Respondents such other relief as may be warranted.

Dated: November 12, 2007
New York, New York

Respectfully submitted,

By: _____
Christopher T. Bradley (CTB-4725)

MARSHALL, CONWAY, WRIGHT & BRADLEY, P.C.
Attorneys for Respondents
116 John Street, 4th Floor
New York, New York 10038