# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK



Nº 07 Civ. 7977 (RJS)

HARTFORD FIRE INSURANCE COMPANY,

Petitioner,

VERSUS

THE EVERGREEN ORGANIZATION, INC., CHARLES A. CARONIA, GARY UPHOUSE, CHARLES CARONIA, JR., ANDREJS KRUTAINIS,

Respondents-Cross-Petitioners.

MEMORANDUM AND ORDER
August 28, 2008

RICHARD J. SULLIVAN, District Judge:

Before the Court are cross-petitions concerning an arbitration award (the "Award") rendered by a three-member arbitration panel (the "Panel") in a dispute between Petitioner-Cross-Respondent Hartford Fire Insurance Company ("Hartford") and Respondents-Cross-Petitioners The Evergreen Organization, Inc., Charles Caronia, Gary Uphouse, Charles Caronia, Jr., and Andrejs Krutainis (collectively, "Evergreen;" the individual respondents are collectively referred to as "Individual Respondents"). Moving under the Federal Arbitration Act, 9 U.S.C. § 1 et seq., ("FAA"), both Hartford and Evergreen seek confirmation of the Award. However, Hartford and Evergreen have differing interpretations of the Award. Accordingly, the Court remanded the case to the Panel for clarification. For the following reasons, the Court now grants Evergreen's motion and confirms the Award as clarified by the Panel.

## I. BACKGROUND

The following facts are drawn from the parties' respective submissions. They do not constitute findings of fact by the Court.

### A. The Parties' Agreements

Hartford is an insurance provider. (Pet. ¶ 13.)[1] Evergreen was an insurance brokerage firm located in Chester Springs, Pennsylvania, and licensed as an insurance agent by the Pennsylvania Department of Insurance. (Id. ¶ 14.) From 1996 to July of 2000, Evergreen administered Reliance National Insurance Company's ("Reliance") GAP insurance business, pursuant to a Program Manager's Agreement and Claims Servicing Agreement. (Cr. Pet. ¶ 2.) GAP insurance generally provides insurance coverage for the monetary difference between the outstanding balance of a vehicle loan or lease and the actual cash value of that vehicle at the time of a covered loss to the vehicle. (Pet. ¶ 13.)

In July of 2000, Hartford acquired the Reliance GAP insurance program. On October 10, 2000, Hartford executed an Amendment to the existing Reliance-Evergreen Program Manager's Agreement and Claims Servicing Agreement to provide that Evergreen would act as program manager and claims servicer for Hartford on the same terms and conditions that Evergreen had done for Reliance. (Cr. Pet. ¶ 3.) In September of 2002, Hartford and Evergreen entered into a Hartford-Evergreen Program Manager's Agreement ("PMA") and Claims Servicing Agreement ("CSA"). (Cr. Pet. ¶ 6.)

Hartford alleges that on January 10, 2003, Hartford terminated the PMA and specifically canceled Evergreen's right to underwrite new insurance on Hartford's behalf.[2] (Pet. ¶ 20.) Nevertheless, pursuant to the CSA and the PMA, Evergreen continued to owe certain duties and obligations to Hartford, including the charging, collection, receipt, accounting and reporting for all premiums collected on policies written under the agreement. (Id.) Evergreen thus remained a fiduciary with respect to such premiums. (Id.) On or about February 17 or 18, 2004, Evergreen served Hartford with a Demand for Arbitration on the issue of the proper premium remittance. (Pet. ¶ 21; Cr. Pet. ¶ 8.)

Hartford alleges that Hartford terminated the CSA with Evergreen effective February 25, 2004. (Pet. ¶ 22.) However, Hartford alleges that Evergreen failed to honor its March 18, 2004 representation that it would meet its obligations under the PMA and CSA and instead, in or about April 8 or 9, 2004, "vanished and ignored its obligations to Hartford." (Pet. ¶ 23.) On April 30, 2004, Hartford served Evergreen with Hartford's own Demand for Arbitration on the issues of Evergreen's alleged breaches of duty in connection with its role as program manager and claims servicer. (Pet. ¶ 24; Pet. Ex. C; Cr. Pet. ¶ 8.)

---

[1] Throughout this Memorandum and Order, "Pet." refers to the Petition filed by Hartford. "Cr. Pet." refers to the Cross-Petition filed by Evergreen. "Pet.'s Mem." refers to the Memorandum of Law filed by Hartford. "Resp.'s Mem." refers to the Memorandum of Law filed by Evergreen.

[2] Evergreen alleges only that in 2004, Hartford exited the GAP insurance business, but not before collecting $96,668,677 in premium. (Cr. Pet. ¶ 7.)

2

B. The Arbitration

Arbitrators were selected pursuant to the procedures contained in the Arbitration Agreement. Hartford appointed Andrew S. Walsh, Esq., as its party arbitrator. Evergreen appointed Bernd G. Heinze, Esq., as its party arbitrator. Pursuant to the Arbitration Agreement, the party arbitrators appointed David Thirkill as umpire. On February 25, 2005, the Panel convened to discuss logistics, procedures, discovery, and scheduling issues, among others. (Pet. ¶ 26; Cr. Pet. ¶ 38.) The Individual Respondents refused to participate in the arbitration. (Cr. Pet. ¶ 39.) Thereafter, the Honorable Lewis A. Kaplan, District Judge, granted Hartford's petition to compel the Individual Respondents to arbitrate. (Cr. Pet.¶ 41.) *See Hartford Ins. Co. v. The Evergreen Org., Inc.*, No. 04 Civ. 3333 (LAK) (S.D.N.Y. Sept. 7, 2005). The parties subsequently conducted extensive discovery. (Pet. ¶ 28; Cr. Pet. ¶ 42.) The arbitration hearing took place from January 9, 2007 through January 12, 2007. (Pet. ¶ 28; Cr. Pet. ¶ 42.) Both parties concur that the hearing was fundamentally fair and that both parties had the opportunity to be heard, present evidence, and argue their claims. (Pet. ¶ 28; Cr. Pet. ¶ 42.) The parties also prepared and submitted extensive post-arbitration hearing briefs. (Pet. ¶ 28; Cr. Pet. ¶ 42.)

On April 2, 2007, the Panel issued its Interim Final Order. (Pet. Ex. D; Cr. Pet. Ex. D.) On July 9, 2007, the Panel issued a Second Interim Final Order, granting Hartford attorneys' fees. (Pet. Ex. E; Cr. Pet. Ex. E.) The Award provides for damages to Hartford in the amount of $5,854,456. (Interim Final Order at 1.) The Panel also awarded attorney's fees and costs to Hartford in the amount of $807,307.91, of which $100,000 was required to be paid personally by Mr. Uphouse. (Second Interim Final Order at 1; Amended Second Interim Final Order at 1.) Accordingly, the total financial liability owed to Hartford under the Award is $6,661,760.91.

In June of 2007, Evergreen partially satisfied the Award and received a release in the amount of $405,622.86. (Cr. Pet. ¶ 48.)

C. The Petition for Confirmation

On September 11, 2007, Hartford filed the instant Petition to Confirm Arbitration. On October 17, 2007, Evergreen filed a Cross-Petition to Confirm Arbitration. Although both Petitions seek to confirm the Award, the parties have different views on the interpretation of the Award. To that end, the parties concur that the total amount of the Award is $6,661,760.91. The parties further agree that, of that Award, Gary Uphouse and The Evergreen Organization are jointly and severally liable for $501,210. (Pet.'s Mem at 4; Resp.'s Mem. at 4.) In addition, the parties agree that Mr. Uphouse is obligated to pay $100,000 of the total attorney's fees imposed by the Panel. (Pet.'s Mem at 4; Resp.'s Mem. at 4.) Neither party asserts that Charles Caronia, Jr., and Andrejs Krutainis are liable in any capacity to Hartford. (Resp.'s Mem. at 21.)

However, Hartford contends that Evergreen's corporate veil was pierced, and that, accordingly, Messrs. Uphouse and Caronia, Sr., in their capacity as the sole shareholders of Evergreen, are jointly and severally liable for the same damages assessed against Evergreen, in the amount of $6,060,550.91. (Pet.'s Mem. at 3-4.) By

contrast, Evergreen asserts that with the exception of Mr. Uphouse's individual liability for the amounts of $501,210 in damages and $100,000 in fees and costs, neither Mr. Uphouse or Mr. Caronia, Sr., are liable for any sum to Hartford. (Cr. Pet. at ¶¶ 46-47.) Accordingly, the dispute between the parties centers on whether the Award did in fact pierce the corporate veil and whether, as a result, Messrs. Uphouse and Caronia, Sr. are liable for that portion of the Award which was rendered against Evergreen.

At a conference held on April 14, 2008, the Court concluded that the Award was indefinite, incomplete, and ambiguous, thereby creating confusion as to what Award the Court was being asked to enforce. (*See* Apr. 14, 2008 Tr. at 6.) Specifically, the Court found that the Award was ambiguous to the extent that it did not clearly set forth whether the amount of the Award in favor of Hartford was against the corporate entity only, or against the two individual respondents (Messrs. Caronia, Sr., and Uphouse) such that these shareholders were jointly and severally liable for the entire amount of the award against Evergreen. (*See id.* at 5.) The Second Circuit has emphasized that in cases of awards that are indefinite, incomplete, or ambiguous, the appropriate course of action is to remand them to the panel for clarification so that the court will know exactly what it is being asked to endorse. *See Rich v. Spartis*, 516 F.3d 75, 83 (2d Cir. 2008); *Am. Ins. Co. v. Seagull Compania Naviera, S.A.*, 774 F.2d 64,67 (2d Cir. 1985). Accordingly, by Order dated May 5, 2008 (the "Clarification Order"), the Court directed the Panel to issue a clarification of its Award. In its Order, the Court specifically emphasized that the Panel was not required to state its reasons for issuing the Award, but simply to explain the Award in a way sufficient to allow effective judicial review. (Clarification Order at 2.)

### D. The Clarification

By Order dated May 12, 2008, the Panel issued a "Clarification of Interim Final Order" (the "Panel Clarification"). The Panel Clarification read: "For purposes of clarification, no individual Respondent is liable, in any capacity, for any portion of the $6,060,550.91 award imposed upon the Evergreen Organization, Inc." The Panel also responded to the Court's detailed inquiries by specifically indicating that Mr. Uphouse is not liable for any portion of the Award in excess of $601,210, and that no other individual is liable for any portion of the Award. (Panel Clarification at 1.)

### II. DISCUSSION

Before the Court are the parties' cross-motions to confirm the arbitration award. However, in light of the Panel's May 12, 2008 clarification, Hartford now requests that the Court remand the Award to the Panel for further clarification and explanation, and that Hartford be allowed on remand to submit a brief for the Panel's consideration. (Pet.'s Letter Brief Dated June 10, 2008, at 6.) In the alternative, Hartford contends that under New York law, specifically, N.Y. C.P.L.R. §§ 7509 and 7511 (McKinney 2008), Hartford may seek a modification or vacatur after an arbitration panel has issued an award or substantive modification that changes the nature of the award. (*Id.* at 3.)

4

For the reasons set forth below, Hartford's request is denied and Evergreen's motion to confirm the Award is granted.

A. Legal Standard

The FAA obligates district courts to confirm arbitration awards on proper motion unless vacated or modified. 9 USC § 9. "Normally, confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *D.H. Blair & Co.*, 462 F.3d at 110 (quoting *Florasynth, Inc.*, 750 F.2d at 176). Accordingly, the court "must grant" the award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. Indeed, the Second Circuit "has repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process. . . ." *Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC*, 497 F.3d 133, 139-40 (2d Cir. 2007) (citing *Halligan v. Jaffray, Inc.*, 148 F.3d 197, 200 (2d Cir. 1998) (noting the strong judicial support of "[t]he use of arbitration as a device to resolve disputes")). "To encourage and support the use of arbitration by consenting parties, [the Second Circuit], therefore, uses an extremely deferential standard of review for arbitral awards." *Id.* at 140 (internal citation omitted).

Furthermore, "[a] federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law." *Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004) (citing *St. Mary Home, Inc. v. Serv. Employees Int'l Union, Dist. 1199*, 116 F.3d 41, 44-45 (2d Cir. 1997) ("Internal inconsistencies in the [arbitrator's] opinion are not grounds to vacate the award notwithstanding the [movant's] plausible argument that the arbitrator's decision was misguided or our own concerns regarding the arbitrator's conclusion.")); *see also Interdigital Commc'ns. Corp. v. Samsung Elecs. Co.*, 528 F. Supp. 2d 340, 350 (S.D.N.Y. 2007) (collecting cases). Moreover, the case law is clear that "[a]rbitrators . . . need not give their reasons for their results." *Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 201 (1956); *see also Sobel v. Hertz, Warner & Co.*, 460 F.2d 1211, 1214 (2d Cir. 1972) ("The Supreme Court has made it clear that there is no general requirement that arbitrators explain the reasons for their award."). Rather, "the arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (citing *Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 121 (2d Cir. 1991) and *Sobel*, 469 F.2d at 1216). Only "a barely colorable justification for the outcome reached" by the arbitrators is necessary to confirm the award. *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Employees Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992). Finally, arbitrators have "power to fashion relief that a court might not properly grant." *Sperry Int'l Trade v. Gov't of Israel*, 689 F.3d 301, 306 (2d Cir. 1982).

Both parties concur that the arbitration award satisfies the minimal threshold requirements for confirmation. (Pet.'s Mem. at 6; Resp.'s Mem. at 7.) The Panel oversaw a full week of live hearing testimony, including direct and cross-examination of eight live witnesses and three witnesses

5

whose testimony was presented by deposition. (Pet.'s Mem. at 6; Resp.'s Mem. at 7.) The Panel itself questioned many of the live witnesses to clarify specific portions of their testimony and to resolve its own questions. (Pet.'s Mem. at 6; Resp.'s Mem. at 7.) Extensive documentary evidence was also presented. (Pet.'s Mem. at 6; Resp.'s Mem. at 7.) In addition, prior to the arbitration hearing, the parties submitted, and the Panel reviewed, detailed pre-hearing briefs with exhibits and excerpts of sworn deposition testimony. (Pet.'s Mem. at 6; Resp.'s Mem. at 7.) After the hearing, and at the request of the Panel, the parties submitted extensive closing briefs. (Pet.'s Mem. at 6; Resp.'s Mem. at 7.)

Nevertheless, although neither party has sought to vacate the Award, Hartford now attempts to circumvent its previously filed petition to confirm the Award by asserting that the Award as clarified is ambiguous and in manifest disregard of the law, such that remand is required. (Pet.'s Letter Brief Dated June 10, 2008, at 5.)

To be sure, there is no dispute that this Court has the authority to remand "[i]ndefinite, incomplete, or ambiguous awards . . . so that the court will know exactly what it is being asked to enforce." *Rich*, 516 F.3d at 83 (internal quotations and citations omitted); *see also Hyle v. Doctor's Assocs.*, 198 F.3d 368, 371, n.1 (2d Cir. 1999). Indeed, the Court invoked this very authority in its May 5, 2008 Order for Clarification of the Award. (*See* Clarification Order at 1.) However, there is no legal basis for the Court to order a second remand to the Panel where there is no ambiguity in the Award. The Court may not remand an award to the Panel for clarification when the Court does not find that the award is, in fact, "indefinite, incomplete, or ambiguous." *Rich*, 516 F.3d at 83 (internal quotations and citations omitted).

Accordingly, the principal issue before the Court is whether the Panel's May 12 clarification is ambiguous. *See Hardy v. Walsh Manning Sec. LLC*, 341 F.3d 126, 134 (2d Cir. 2003); *Rich*, 516 F.3d at 83-84 (citing *Hardy* for proposition that remand of *unclear* award is appropriate to determine if there was manifest disregard of law); *Wallace*, 378 F.3d at 191 (describing award in *Hardy* as containing "an actual logical impossibility").[3]

B. Analysis

1. The Panel's Order Is Not Ambiguous

The substance of Hartford's argument is that the Panel made the following specific finding:

> After much deliberation and extensive review of the cases cited by the parties, the majority of the Panel are

---

[3] *Hardy* is arguably abrogated by the Supreme Court's recent holding that the FAA sets out the exclusive statutory grounds for vacating a commercial arbitration award. *See Hall Street Assocs. v. Mattel*, — U.S. —, 128 S.Ct. 1396, 1403 (2008). At least one court in this District has construed *Hall Street* as inconsistent with the treatment of manifest disregard of the law as an independent basis for vacatur under the FAA. *See Robert Lewis Rosen Assocs. v. Well*, No. 07 Civ. 11403 (RJH), 2008 U.S. Dist. LEXIS 51446, at *10-12 (S.D.N.Y. July 7, 2008). Because the Court concludes that the award is clear and makes no "fundamental mistake of law," the Court need not reach the question of whether *Hall Street* abrogates the judicially constructed doctrine that manifest disregard for the law is a sufficient ground for *vacatur*.

6

of the opinion that Messrs. Uphouse and Caronia, the shareholders of the corporation, disregarded the corporate form of Evergreen in virtually all respects. They treated the corporation as their 'personal sand box.' Accordingly, the Panel finds that Messrs. Uphouse and Caronia Sr. [sic] are not protected by the Evergreen corporate structure.

Interim Final Order at 6.i.

Based on this language, Hartford argues that the Panel pierced the corporate veil and that accordingly, the shareholders *must* be found liable for all of the corporation's debts and liabilities. Hartford thus contends that the Panel's Clarification Order, which made clear that Mr. Caronia, Sr., had no liability and that Mr. Uphouse's liability was limited to the specific amount of $601,210, leaves the Award and its effect "ambiguous." (Pet.'s Letter Brief Dated June 10, 2008, at 5.)

The Court disagrees with Hartford's contention because the Award, which now consists of several Orders including a Clarification Order, is internally consistent and unambiguous. The Panel has made it abundantly clear that Mr. Caronia, Sr., is not liable in any capacity, and that Mr. Uphouse is liable only in the amount of $601,210. In addition, the Clarification Order is consistent with the Panel's first Interim Final Order, which noted that "The Panel is not convinced that Mr. Caronia, Sr. was aware that Mr. Uphouse had acted wrongly and does not find him personally liable." Interim Final Order at ¶ 6.iii; *see also id.* at ¶ 7 ("No award is therefore made against [Mr. Caronia, Sr.] personally."). The fact that Hartford does not like the Award does not render the Award ambiguous or unclear.

Nor does the Court conclude that the Award contains "a fundamental mistake of law" or an "actual logical impossibility" that would warrant remand to determine if the Panel manifestly disregarded the law. *Hardy*, 341 F.3d at 133. The thrust of Hartford's argument is that the Panel cannot, as a matter of law, conclude that the corporate veil is pierced and simultaneously assert that the shareholders have little or no liability. (Pet.'s Letter Dated June 10, 2008, at 5.) However, Hartford cites no authority, and this Court has not found any, for Hartford's proposition that "where the corporate veil is pierced based upon shareholder's [sic] domination and control of a corporation, the shareholders are liable for the corporation's debts and liabilities regardless of whether they actually engaged in any fraudulent conduct." (Pet.'s Letter Dated June 10, 2008, at 4-5.) To the contrary, under New York law, "in the absence of constitutional, statutory, or charter provisions to the contrary, a stockholder is not merely by reason of his stock interest, liable at common law for any of the obligations of a corporation, whatever their character and in whatever manner incurred." *Connell v. Hayden*, 443 N.Y.S.2d 383, 402 (2d Dep't 1981).

Indeed, the Award, as clarified, makes it clear that the Panel did not pierce the corporate veil in the manner that Hartford suggests. As the Second Circuit has recognized, "'New York law requires the party seeking to pierce a corporate veil to make a two-part showing: (i) that the owner exercised complete domination over the corporation with respect to the transaction at

issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.'" *Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997) (quoting *Morris v. N.Y. State Dep't of Taxation and Fin.*, 82 N.Y.2d 135, 141 (1993)). Thus, "'[w]hile complete domination of the corporation is the key to piercing the corporate veil . . . such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward the party seeking piercing is required.'" *Am. Fuel Corp.*, 122 F.3d at 134 (quoting *Morris*, 82 N.Y.2d at 141). As clarified, the Award plainly demonstrates the Panel's finding that the first prong of the corporate veil piercing test was met: namely, that Uphouse and Caronia, Sr., dominated the corporation and "treated [it] as their 'personal sand box'." Interim Final Order at 6.i. However, the Award, as clarified, convincingly demonstrates that the Panel rejected the second prong of the veil piercing test — in its entirety with respect to Caronia, *see id.* at 6.iii ("The Panel is not convinced that Mr. Caronia, Sr. was aware that Mr. Uphouse had acted wrongly and does not find him personally liable."), and with regard to all but one transaction in connection with Uphouse, *see id.* at 6.ii ("In respect of JM&A account (and in respect of that account only), the majority of the Panel concludes, that Gary Uphouse, by his actions and by virtue of the lack of corporate protection, both as outlined above, is individually and personally liable. He is hereby held jointly (with Evergreen Organization) and severally liable for damages in the amount of $501,210 (an amount based on a $3 enrollment fee multiplied by 167,070 enrollments [sic]")).

Since, as noted above, "the arbitrator's rationale for an award need not be explained and . . . should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case," *D.H. Blair*, 462 F.3d at 110, and since only "a barely colorable justification for the outcome reached" by the arbitrators is necessary to confirm the award, *see Landy Michaels Realty Corp.*, 954 F.2d at 797, the Court finds that there was ample basis for the Panel's determination of liability with respect to the two Evergreen shareholders. Under these circumstances, the Court cannot conclude that the Award is ambiguous or that there is a "fundamental mistake of law" in the Award such that remand would be warranted under *Hardy*.

Nor may Hartford seek to accomplish by remand what it could have sought by a motion to vacate. As noted above, the FAA provides that a motion to vacate "must be served upon the adverse party or his attorney within three months after the award is filed." 9 U.S.C. § 12. The statute provides no exception to this three month limitations period. *See Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984). Furthermore, a clarification order pursuant to a judicial remand for clarification does not constitute a new arbitration award, nor does it constitute a modification of the award such that it would re-start the 90-day period of time given by the statute to file a motion to vacate an award. *See Hyle*, 198 F.3d at 372 n.1 ("A remand to eliminate an ambiguity does not 'vacate, modify, or correct' an award; it returns the award to the arbitrator for whatever change the arbitrator might make to resolve the ambiguity.").

8

Indeed, as the Court discussed extensively on the record at the June 3, 2008 Conference, Hartford understood that there was a difference in the interpretation of the Award long prior to the Clarification Order. (*See* June 3, 2008 Tr. at 16:17-21.) Notwithstanding that this "inherent conflict in the award was pretty obvious on its face" (*id.* at 16:22-23), Hartford nevertheless "threw the dice down" and chose to submit a petition to confirm the Award to this Court, rather than seeking clarification directly from the Panel or filing a timely petition to vacate the award. (*Id.* at 16:8-9.) Having made its gamble, Hartford may not now construct an ambiguity in the Award where one does not otherwise exist so as to evade the fact that the FAA precludes Hartford from filing a motion to vacate.

### 2. New York Law Does Not Provide an Alternative Basis for Remand

In the face of this logic and authority, Hartford alternatively contends that under New York law, it is entitled to seek clarification from the Panel *without a remand from the Court*. (Pet.'s Letter Brief Dated June 10, 2008, at 3.) Hartford is plainly in error.

The arbitration provisions of the PMA drafted by Hartford specifically provide for governance by the FAA. *See* Pet. at Ex. A, Article XVIII. "For cases that fall within its reach, the FAA governs all aspects of arbitration procedure and pre-empts inconsistent state law, even when subject-matter jurisdiction is based on diversity of citizenship and when the parties have selected a particular state's law by contract." *Aviall, Inc. v. Ryder Sys., Inc.*, 913 F. Supp. 826, 830 (S.D.N.Y. 1996) (internal citations omitted); *see also Hall Street*, 128 S.Ct. 1396 (2008). Because the PMA specifically indicates that governance is under the FAA, the fact that the PMA selects New York law as its choice of substantive law is immaterial. Hartford's assertion that the C.P.L.R. entitles it to seek clarification directly from the Panel is thus rejected. Accordingly, remand to the Panel is a power exclusively vested in the District Court and is reserved for situations in which the arbitration award is "indefinite, incomplete, or ambiguous." *Rich*, 516 F.3d at 83. As noted above, the Panel's Award is none of these things, and the Court thus declines to remand the Award for further clarification.

### III. CONCLUSION

Because the Award, as clarified by the Panel, is clear and unambiguous, and because neither party has sought to vacate or otherwise modify the Award, the Court hereby GRANTS Respondents' Cross-Petition to Confirm. Hartford's Petition to Confirm is hereby DENIED. The parties are ordered to submit proposed final judgments within 30 days.

SO ORDERED.

/s/ Richard J. Sullivan
RICHARD J. SULLIVAN
United States District Judge

Dated:   August 28, 2008
         New York, New York

9

\*\*\*

Petitioner Hartford Fire Insurance Company is represented by James E. Fitzgerald, Esq., Michele Lynne Jacobson, Esq., and Seema Anita Misra, Esq., Stroock & Stroock & Lavan, L.L.P., 180 Maiden Lane, New York, New York, 10038-4982. Respondents The Evergreen Organization, Inc, Charles Caronia, Sr., Charles Caronia, Jr., Gary Uphouse, and Andrejs Krutainis are represented by Michael Scott Gollub, Esq., Marshall Conway & Wright, P.C., 116 John Street, New York, New York 10038, and Philip M. Gilligan, Esq., Gilligan and Peppelman LLP, 606 East Baltimore Pike, Media, Pennsylvania 19063.